UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| ROBERT SIMENSKY,<br><br>    *Plaintiff*,<br>              vs.<br><br>CODY KEITHAN and K CONSTRUCTION, INC.,<br><br>    *Defendants*. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff Robert Simensky, by and through his undersigned attorneys, for their Complaint against defendants Cody Keithan and K Construction, Inc. (together, "Defendants"), hereby allege as follows:

## NATURE OF ACTION

1. Plaintiff Robert Simensky ("Simensky") resides in New York State and owns, through Berwick Hill LLC, which is a single-member LLC of which Simensky is the sole member, a second home and adjacent properties in Rockport, Maine (the "Rockport Home").

2. In or around May 2024, Simensky contracted with Defendant K Construction, Inc. ("K Construction") to carry out improvements to the Rockport Home, including installation of stone pathways, retaining wall, outdoor kitchen, brick columns, firepit, fencing, and lighting (the "Project"). Defendants thereafter breached the parties' agreement through false promises, defective, unsafe and untimely workmanship, overbilling, and abandonment of the Project, causing Simensky actual damages in the range of $400,000 with costs continuing to accrue.

3. By this Complaint, Simensky asserts claims against Defendants for breach of contract, fraudulent inducement, negligent misrepresentation, negligence, breach of express warranties, unjust enrichment, and remedies under the Maine Home Construction Contracts Act and the Maine Deceptive Trade Practices Act, as well as under the Declaratory Judgment Act. To

the extent that Berwick Hill LLC's real property was injured by Defendants, Berwick Hill LLC has assigned to Simensky any tort and damage claims it may have.

## PARTIES

4. Plaintiff Simensky is a citizen of the State of New York.

5. Defendant Cody Keithan ("Keithan") is a natural person who, upon information and belief, is a citizen of the State of Maine.

6. Upon information and belief, defendant K Construction is a corporation organized and existing under the laws of the State of Maine, with its principal place of business in the State of Maine, and is owned by Keithan.

## JURISDICTION

7. This Court has subject matter jurisdiction over Simensky's claims against Defendants pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Pursuant to 28 U.S.C. § 1391 and Local Rule 3(h), venue in the Portland courthouse of the District of Maine is proper because, *inter alia*, a substantial part of the events or omissions giving rise to the claims herein occurred in Knox County.

## BACKGROUND

### A.    Parties Enter into Agreement

9. K Construction holds itself out as a full-service construction and general contracting firm. Upon information and belief, it is owned and operated by Keithan.

10. On December 12-13, 2023, Simensky reached out to Keithan to inquire about his availability, interest and proposed cost for two potential projects at the Rockport Home, and he sent Keithan architectural construction plans.

11.    Keithan confirmed receipt of those plans on January 8, 2024.

12.    Thereafter, no proposal was forthcoming from Defendants, despite their repeated assurances that proposals were close to being completed. To move things along, Simensky suggested that Defendants focus on a third opportunity, the Project, which was a smaller patio plan for the Rockport Home.

13.    In or around April and May 2024, Defendants unconditionally represented on more than one occasion that they would start the Project right away and have it substantially completed within thirty days, but Defendants thereafter still failed to initiate work on the Project.

14.    In June 2024, K Construction finally sent Simensky a proposal with the costs identified for a portion of the agreed scope of work to be done at the Rockport Home, and a few days later, John Ford ("Ford"), K Construction's project manager, told Simensky that Defendants would not start working on the Project until their proposal was signed.

15.    On June 28, 2024, Simensky executed and returned the proposal (as later amended, "the Contract") for an initial price of $105,560 for a portion of the Project.

16.    Specifically, the Contract called for the installation of stone pavers to be completed by July 24, 2024; the construction of a firepit, outdoor kitchen, and stone pathways by August 30, 2024; and the completion of brick columns and all lighting by September 13, 2024.

17.    K Construction agreed to provide adequate notice of deviations from the agreed-upon Project price.

18.    Follow-on addendums approved in July 2024 and October 2024 authorized $17,492 in further expenditures for the addition of mahogany fencing and fence cleaning services, bringing the total authorized costs under the Contract to $123,052.

    **B.**    **K Construction Breaches the Contract**

19. On July 7, 2024, Simensky communicated to Defendants his concerns that the work to that point on the Project was being done poorly, at a slow pace, and with minimal oversight and supervision.

20. In a meeting with Simensky, Ford told Simensky that Defendants' situation had changed since they took on the Project in April-May 2024.

21. Ford stated that at the time Defendants needed the work, but now in July 2024 they no longer needed the work and had taken on other "better" jobs closer to their office. Ford further told Simensky that he should consider himself lucky if Defendants show up and finish the Project at all.

22. Simensky reported this conversation and the lack of care and oversight of the Project to Keithan.

23. Keithan promised Simensky that Keithan would personally take over the management of the Project, but Keithan failed to do so.

24. In a follow-up conversation in July 2024, Simensky advised Keithan that the fire pit, fencing, brick columns and gates were misaligned, and that Keithan should check this work before proceeding.

25. Keithan denied any misalignment of the work, claiming that he had used laser beams to line it all up and therefore everything was "perfect".

26. Between July and November 2024, Simensky repeatedly pleaded to Defendants to bring the Project to completion.

27. Defendants responded with numerous promises to complete the entire Project "within a few weeks" but always failed to do so.

28. On October 10, 2024, Ford sent a message to Simensky stating in substance that

Simensky had a $9,437 credit with K Construction.

29. On February 6, 2025, Ford sent a message to Simensky stating in substance that Defendants had made an internal accounting error, that Simensky now owed K Construction $59,349.44, and that Defendants would not perform any additional work on the Project until this amount was paid.

30. This overcharge occurred even though, after the Contract was signed, the scope of the Project was reduced by eliminating the outdoor kitchen and propane connection for the fire pit because those tasks appeared beyond Defendants' skill set.

31. By February 6, 2025, the Project – then approximately five (5) months past the revised agreed-upon completion date and approximately eight (8) months past the initial agreed completion date – had ballooned in cost to approximately $160,000, an amount $37,000 over the agreed-upon price while a large portion of the Project still remained undone.

32. In addition, relying on Keithan's representations, Simensky had purchased a significant sum of materials as well as earthwork and other services for the Project.

33. On February 18, 2025, Keithan for the first time began to call the work started on the Project "Phase 1" and the work Defendants had not yet started "Phase 2".

34. At about this time, Keithan advised Simensky that Defendants wanted to get bids from other hardscape subcontractors who Keithan claimed would do a better job than the hardscape subcontractor Defendants had been using up until then (RidgeRock Landscaping), but Keithan thereafter never advised Simensky as to whether he ever solicited such other bids.

35. On February 25, 2025, Keithan sent a budget to Simensky to complete "Phase 1" and stated that Defendants were not willing to complete "Phase 2" of the Project.

36. In early March 2025, the parties agreed to complete what Defendants were referring

to as "Phase 1" for a fixed price of $70,000. It was agreed that $50,000 would be paid when substantially all the work was completed and a $20,000 "holdback" would be paid after a punch list was created and Simensky signed off on the work.

37. Based on Keithan's assurances that Defendants would shortly be finishing the Project the "right way", on May 7, 2025 Simensky wired K Construction the $50,000 because Keithan insisted that Simensky wire this sum one week before their scheduled meeting to review Defendants' work product and before Simensky could inspect the work.

38. On May 14, 2025, Simensky met with Keithan to inspect the work done on the Project. Defendants' workmanship proved to be defective, of poor quality, incomplete, and replete with safety hazards.

39. Keithan acknowledged that he knew that much of the work was incorrect or incomplete and that he was hoping Simensky would not notice.

40. Among other issues:

- A retaining wall was built improperly and presents an ongoing risk of failure, constituting a safety hazard;

- Lighting fixtures were incorrect and electrical systems were installed improperly, requiring thousands of dollars in repair and/or replacement;

- An access road was damaged by Defendants' vehicles that will be costly to repair;

- Stone pathways were installed improperly, resulting in gaps that require leveling as well as additional filling-in with more stone materials;

- The patio area was improperly graded for drainage, resulting in flooding and dirt accumulation that stains the installed stones and presents a safety hazard;

- Defendants failed to install a new mahogany fence to match the existing fence as agreed, a service that had already been paid for by Simensky;

- Existing fencing and gates were not painted and weather-conditioned;

- Drains were not repaired and repainted as agreed; and,

- Defendants failed to properly maintain the site and clean up debris left after it abandoned the Project, necessitating a clean-up effort that cost thousands of dollars.

41. At about this time, when Simensky asked Keithan why RidgeRock Landscaping could not return to finish the job, Keithan advised Simensky that Keithan had a falling out with RidgeRock Landscaping and they had not worked together "in a long time".

42. From approximately May 28, 2025 through June 25, 2025, Simensky sent several emails to Defendants asking Defendants when they would come back and finish the Project.

43. On June 11, 2025, Keithan told Simensky: "Now that I see plants are being delivered, I know you aren't going to sue me for screwing up this job so you will never see me again."

44. On June 26, 2025, Keithan sent a follow-up email to Simensky reaffirming that Defendants would not return to correct the defects and finish the Project.

45. As a result, Simensky has been, and will continue to be, forced to hire third-party contractors to repair or replace the defective work as well as complete the work Simensky already paid Defendants to complete, at significant additional expense.

46. Upon information and belief, almost none of the completed work, for which Simensky paid $150,000 to K Construction plus some $250,000 in other material and labor costs, will end up being useable.

47. On July 5, 2025, Simensky asked Defendants to mediate their dispute.

48. Defendants did not respond, and instead, on August 12, 2025, an attorney representing them sent a letter to Simensky (incorrectly) claiming that, based on "invoices related to the project for materials and labor; and my client's summary of charges for work performed at your request and with your knowledge …, it is apparent that you owe my client $67,298.83."

49. On September 19, 2025, the same lawyer for Defendants further stated that: "my

client remains willing to engage in mediation" but that "we need to file the complaint within the statutory time frame in order to preserve the mechanic's lien."

50. Given Defendants' stated intention to commence litigation and file a mechanic's lien on the Rockport Home in advance of mediation, Simensky has no recourse but to seek judicial intervention for the causes of action below.

## FIRST CAUSE OF ACTION
### (Breach of Contract against K Construction)

51. Simensky realleges each allegation above as if set forth fully herein.

52. As set forth above, Simensky entered into a valid and binding agreement with K Construction to perform the work required of the Project, via the Contract, as subsequently amended.

53. Simensky has fully performed his duties under the Contract.

54. K Construction has materially breached its duties under the Contract.

55. Simensky has suffered a pecuniary loss as a result thereof.

56. Simensky is entitled to damages from K Construction in an amount to be determined at trial, plus costs, interest, expenses and attorneys' fees.

## SECOND CAUSE OF ACTION:
### (Fraudulent Inducement against Defendants)

57. Simensky realleges each allegation above as if set forth fully herein.

58. Defendants knowingly made false statements of material fact in order to induce Simensky to retain K Construction, including falsely stating unconditionally on more than one occasion that they would start the Project right away and that the Project would be substantially complete within thirty days.

59. However, Defendants later admitted in July of that year that their unconditional statements to Simensky were false when made, in that their commitment to complete the Project within thirty days was in fact conditioned on not having any "better" jobs.

60. Simensky reasonably relied on those promises to his detriment, and Simensky would not have entered into the Contract had he known those promises to be untrue.

61. Simensky has suffered a pecuniary loss as a result thereof.

62. Simensky is entitled to damages from Defendants in an amount to be determined at trial, plus costs, interest, expenses and attorneys' fees.

### THIRD CAUSE OF ACTION:
### (Negligent Misrepresentation against Defendants)

63. Simensky realleges each allegation above as if set forth fully herein.

64. Defendants negligently made false statements of material fact in a transaction in which they had a pecuniary interest, supplied false information for the guidance of Simensky in his business transactions, and failed to exercise reasonable care or competence in those communications.

65. These false statements included misstatements with regard to K Construction's quality of work, pricing for said work, and the timeline for Project completion.

66. Simensky reasonably relied on those statements to his detriment.

67. Simensky has suffered a pecuniary loss as a result thereof.

68. Simensky is entitled to damages from Defendants in an amount to be determined at trial, plus costs, interest, expenses and attorneys' fees.

### FOURTH CAUSE OF ACTION:
### (Negligence against Defendants)

69. Simensky realleges each allegation above as if set forth fully herein.

70. Defendants owed a duty to Simensky to ensure that the Project was planned, designed, implemented, and constructed in accordance with applicable codes, customary industry standards, and the parties' agreements, specifications and standards, without defects or dangerous conditions, in a good and workmanlike manner.

71. As set forth above, Defendants breached their duty to Simensky by, among other things, failing to plan, design, implement, and construct the Project in accordance with applicable codes, customary industry standards, and the parties' agreements, specifications and standards, without defects or dangerous conditions, in a good and workmanlike manner.

72. Simensky has suffered a pecuniary loss as a result thereof.

73. Simensky is entitled to damages from Defendants in an amount to be determined at trial, plus costs, interest, expenses and attorneys' fees.

### FIFTH CAUSE OF ACTION:
### (Breach of Express Warranties against K Construction)

74. Simensky realleges each allegation above as if set forth fully herein.

75. K Construction expressly warranted its work would be free from faulty materials; constructed according to the standards of the building code applicable for this location; constructed in a skillful manner and fit for habitation or appropriate use; and that the warranty rights and remedies set forth in the Maine Uniform Commercial Code apply to this contract.

76. K Construction breached these express warranties, *inter alia,* by failing to comply with the requirements of applicable codes, by failing to perform its work in accordance with customary industry standards and the parties' agreements, specifications and standards, by failing to employ good design, and by not performing its work in a skillful manner and fit for habitation and appropriate use.

77. Simensky has suffered a pecuniary loss as a result thereof.

78. Simensky is entitled to damages from K Construction in an amount to be determined at trial, plus costs, interest, expenses and attorneys' fees.

### SIXTH CAUSE OF ACTION:
### (Unjust Enrichment against Defendants)

79. Simensky realleges each allegation above as if set forth fully herein.

80. By paying K Construction substantially more than the work was worth, Simensky conferred a benefit on Defendants.

81. Defendants had knowledge of and/or appreciation for this benefit and accepted and retained the benefit.

82. Defendants have been unjustly enriched at the expense of Simensky.

83. The circumstances are such that it would be against equity and good conscience to permit Defendants to retain the benefits they received at the expense of Simensky.

**SEVENTH CAUSE OF ACTION:**
**(Violations of Maine Home Construction Contract Act Against K Construction)**

84. Simensky realleges each allegation above as if set forth fully herein.

85. K Construction did not sign the Contract, in violation of 10 M.R.S. § 1487.

86. The Contract did not include a warranty that the work would be fit for appropriate use, in violation of 10 M.R.S. § 1487(7).

87. The Contract did not include as an addendum a copy of the Maine Attorney General's consumer protection information on home construction and repair, in violation of 10 M.R.S § 1487(13).

88. The Contract did not include a clear and conspicuous notice that consumers are strongly advised to visit the Maine Attorney General's publicly accessible website to gather current information on how to enforce their rights when constructing or repairing their homes, in violation of 10 M.R.S. §1487(14).

89. Based on the foregoing, Simensky has been injured and is entitled to damages from K Construction in an amount to be determined at trial, plus civil penalties, costs, interest, expenses and attorneys' fees.

**EIGHTH CAUSE OF ACTION:**
**(Violation of Uniform Deceptive Trade Practices Act Against Defendants)**

90. Simensky realleges each allegation above as if set forth fully herein.

91. Defendants violated the DTPA by knowingly representing that the goods and services provided would be of a particular standard, quality or grade when they in fact were of another, lesser standard, quality or grade.

92. Simensky has suffered a pecuniary loss as a result thereof.

93. Simensky is entitled to damages from Defendants in an amount to be determined at trial, plus costs, interest, expenses and attorneys' fees.

### NINTH CAUSE OF ACTION
### (Declaratory Judgment against Defendants)

94. Simensky realleges each allegation above as if set forth fully herein.

95. A case of actual controversy exists between the parties with regard to Defendants' contention that Simensky owes $67,299 in unpaid invoices.

96. Simensky denies that there are any outstanding invoices, and none are owing.

97. Pursuant to 28 U.S.C. § 2201, Simensky seeks a declaration that no amount is owed to Defendants.

***

WHEREFORE, Simensky hereby requests that the Court grant the following relief:

i. Monetary damages against Defendants in an amount to be determined at trial, including punitive damages;

ii. A declaratory judgment as set forth above;

iii. An award of civil penalties and Simensky's costs, disbursements and attorneys' fees;

iv. An award of pre- and post-judgment interest; and,

v. Such other and further relief as the Court may deem just and proper.

October 1, 2025

                                            /s/ Kurt E. Olafsen
                                            Kurt E. Olafsen
                                            OLAFSEN & EILERS, LLC
                                            75 Pearl Street, Second Floor
                                            Portland, Maine 04101
                                            207-615-0577
                                            kolafsen@olafseneilers.com

                                            *Of Counsel:*
                                            John Dellaportas
                                            Eric Mullery
                                            EMMET, MARVIN & MARTIN, LLP
                                            120 Broadway
                                            New York, New York 10271
                                            (212) 238-3000
                                            jdellaportas@emmetmarvin.com
                                            emullery@emmetmarvin.com

                                            *Attorneys for Simensky*